May it please the Court, I am Emily Cates on behalf of Plaintiff Appellant, Mr. Mullins. I'd like to reserve some rebuttal time, two minutes please. This case involves an appeal from a motion for summary judgment. And the question is whether the trial court erred in holding that there was no genuine issue of material fact with respect to Mr. Mullins' due process claim. If there was evidence in the record that he would be subjected to death or serious injury if he debriefed. As described in the briefs on appeal, Mr. Mullins was transferred to a super maximum facility in Arizona known as SMU-2 nearly eight years ago. He has resided there in solitary confinement ever since. He was transferred because he was believed... Counsel, can I interrupt you? Is that a due process claim or is it an Eighth Amendment claim? Mr. Mullins did assert an Eighth Amendment claim. That claim was tried below. He also asserted a due process claim. The court dismissed it granting partial summary judgment for the state. Let me try and ask the question in a different way. What's confusing me here is his real concern, I'm hearing you say, is that if he were forced to cooperate in order to purge himself of the classification that he was in, he would be in danger of retaliation. And I'm having a hard time understanding why that isn't an Eighth Amendment conditions of confinement claim as opposed to a due process claim. Although there is some overlap, Mr. Mullins, the crux of Mr. Mullins' due process claim is that it's not really a meaningful opportunity to be heard and to get out of solitary confinement if his only option is to subject himself to death or serious injury. That doesn't really provide him with a meaningful opportunity to be heard and a meaningful review of his confinement. What about the alternative method by which one can get out of solitary confinement? I forget the name of the program. I believe you're referring to the step-down program? Isn't that available to him as an alternative to cooperating? The step-down program was not fully developed on the record. It appears to have been implemented after the trial court granted summary judgment dismissing Mr. Mullins' due process claim. The state concedes in footnote 4, I believe, of their answering brief that it's not clear whether he's even eligible for or qualified to participate in the step-down program. And they're not arguing that the step-down program somehow moots this appeal. Furthermore, based on the limited record, my understanding of the step-down program is it's a five-and-a-half-year program after which prison officials retain unfettered discretion to determine whether an inmate can be transferred out of solitary confinement. I assume he's serving a very lengthy sentence as it is, right? I believe he has a 20-year sentence, yes. 20 years. As a result, the only sure way out of the conditions at SMU II, the solitary confinement conditions there, is to debrief. And the state doesn't contest that. Well, the state doesn't contest it in a sense, and yet they do, don't they? If he became sick, if he became mentally unbalanced, something like that, they'd let him out, right? What do you know? Does the record in any way reflect that? I'm sorry, does the record... If he became mentally unbalanced because of the lack of association with other people, would the state let him out? I don't think that that's been fully developed on the record. It hasn't been fully developed because it was not... the claim was not brought under the Eighth Amendment, right? Well, there was an Eighth Amendment claim brought, and it was tried, and he did allege that he was being subjected to psychological torture because he was being deprived of human contact, he was being deprived of the other privileges, if you'll call them privileges, of ordinary prison life. And he did allege that he was suffering psychological torture, and they didn't let him out. The only way to get out is to debrief, and there's evidence in the record that debriefing will subject him to serious injury or death. The threat of serious injury or death. Yes. The state is not going to be responsible for his injury or death, in a sense. They are not going to be the actors involved. You're talking about other people killing him, is that correct? That's true. Okay. The state concedes that there's a potential of retaliation from gang members. It's undisputed that the gang that Mr. Mullins is alleged to be a member of is very violent. That's one reason why you end up in the maximum security unit, is it not? Because gangs attack other gangs in prison, and even their own members. Absolutely. And the state does have an interest in ensuring the safe management of its prisons. However, Mr. Mullins' only way to get out after eight years is to subject himself to retaliation. He has a liberty interest in avoiding confinement, and there must be another way to assess whether he's still a danger. But doesn't the segregation cover more than inmates who attack other inmates? It's also used to protect inmates from attacks from other inmates. There is protective custody. I don't know what protective custody provides, but it provides more privileges than the solitary confinement that Mr. Mullins... It certainly wouldn't include returning him to the general prison population, and under his theory, that's where the risk is, correct? That's correct. Okay. Also, there has been case law, and Wilkinson indicates that retaliation is not limited to the inmate himself, but could extend to family members. So protective custody wouldn't affect that. There was evidence before the trial court that he could be subjected to serious injury. The trial court ignored that evidence and determined in favor of the state that he had no due process claim. We're asking for very limited relief here, an opportunity to put on a case, to present a case about Mr. Mullins... Excuse me. We simply ask that the case be remanded so that a trial can be had to determine if he is going to be subjected to serious injury or death. Thank you, Ms. Cate. I'll reserve the rest of the time. Very well. Ms. Stewart? Thank you, Your Honors. May it please the Court. My name is Kathy Stewart, and I am here on behalf of the Apolice, current and former prison officials with the Arizona Department of Corrections. The Court has made some astute observations already here today. First of all, that the reason that Mr. Mullins is in SMU and has been there for eight years, is because he was a validated member of the Aryan Brotherhood, a security threat group. He does not dispute that validation. He does not challenge the process pursuant to which he was validated as a gang member. And it's that status that produces or creates the risk to prison security, a risk well recognized by the United States Supreme Court in the Wilkinson case. The underlying concern here, I think I may be making Ms. Cate's argument, but we, I guess, are being asked to assume that as a condition of gang membership, that one never leaves the gang. It's like taking the blood oath for La Cosa Nostra. There is no out. And that anybody who seeks to renounce membership essentially signs his or her own death warrant in a gang. Is that basically what he's arguing, so that he can't debrief or get out? Well, I think that is a valid assumption, that the Aryan Brotherhood, like most of these organizations, operates by the blood in, blood out philosophy, which means it is not debriefing that poses the risk to Mr. Mullins. It's deciding to leave this gang, period. Whether he was in prison or not, that risk would be there. That risk would be there for his family. Importantly, he has completely ignored the fact that because of that risk, which, as your Honor indicated, underscores the whole reason for the security threat group process of validation and debriefing, involuntary protective segregation is absolutely one of the key factors of this policy. It's not an option for obvious reasons. And that underscores the fact that that is not a disputed issue of fact in this case. There isn't a dispute that these gangs are depraved, and that someone deciding, hey, thanks, but no thanks, I'd like to leave, would be at risk. And that's part of, or one of the three objectives served by the policy. They're expressly set out in the policy. There's no dispute here that they represent legitimate penological interests. The first is, are we to take inmate Mullen's word for it that he has renounced the membership? There must be other ways, claims Mr. Mullen's counsel, to determine whether his status has actually changed. They have not proposed any other meaningful alternative. No, that's okay. Well, he did have an Eighth Amendment claim that went to the jury, as I understand the case. That's correct. And that Eighth Amendment claim, I assume, was that he was being held in administrative segregation with the only way of being let out to renounce the gang and help the prison by providing information about the gang. Was that the pitch that he made on his Eighth Amendment jury claim? The Eighth Amendment claim, Your Honor, really focused on the conditions in SMU. The conditions in, as you said. In SMU. Not the way, the only way he could get out was to do something which he found so terrifying that he couldn't do it. Correct. So that has not gone to a jury. No, and it has not been raised as an issue. The Eighth Amendment claims, some of them, specific conditions in SMU did survive summary judgment and were presented to the court, to the jury. Excuse me. Actually, no. It was a court trial, actually. That's incorrect. But the issue, and actually at the time of summary judgment, was really framed. His complaint was that he was being forced to incriminate himself, which clearly, obviously, does not apply. The Fifth Amendment does not apply in this context. It's only been on appeal that. And he did get notice and an opportunity to be heard, so the procedural due process apparently was not a violation there. With respect to validation, and more importantly, with respect to the periodic reviews that are at issue here. Every six months. Every six months, there is absolutely no dispute that the process he has received meets the minimum due process, informal, non-adversary kind of procedure identified in the Wilkinson case. He got notice and he had an opportunity to be heard. What he's claiming is it's not meaningful if it doesn't entail the department being required to simply take his word for the fact that he is now renounced. That if, in addition to that, he has to provide information that enables the department to confirm the sincerity of his renunciation, to promote and continue their efforts to try to confine and fight back against gang violence, and importantly, the third one, to determine what protective needs he's going to need exactly once he's placed into a less restrictive environment. Protective segregation involves a whole lot of different scenarios and the opportunity for his classification scores based on his behavior, etc., to continue to be reduced. And as a result of that, they're going to be making determinations about what other inmates he can or cannot be housed with. So your argument is it's not really a due process claim. It may be a Hobson's choice that he has by virtue of the difficult decision that he has to face about whether or not he renounces and cooperates. But to the extent he's complaining about due process, there is a procedure in place that he can avail himself of if he wants to. He just doesn't like the consequences of having to do this. The potential, and while it may be a recognized risk and really not disputed, there is no evidence put into the record by Mr. Mullins of any debriefers or debriefing inmates who have been killed or seriously harmed. That's not part of the record. That's why I asked the question of his case, because I'm having a hard time understanding why this is a due process violation and not something else. Mr. Mullins essentially claims that part of due process requires periodic reviews and they must be meaningful. It's not meaningful, he says, if he is required to place himself in jeopardy. And again, it's walking away from this gang that presents the security risk. And if we apply the Matthews factors, the three-factor test, putting him in there, satisfied those three factors, it would be incongruous that on his word alone we should be required to release him into the population when, if he's insincere, other inmates may be at risk, where if we don't know exactly the nature of his affiliations, we may not be able to adequately protect him. And we have a legitimate penological interest in continuing to gather what information we can to try to suppress the more generalized threat. Thank you, Your Honor. Thank you, Ms. Stewart. Ms. Gates, you have about a minute and a half left. Just a few points, Your Honor. The State mentioned that there is no dispute that the annual review process provides due process to Mr. Mullins. There is, in fact, a dispute. Mr. Mullins argues that the process that he receives every six months is not meaningful. The crux of due process is that he has a meaningful opportunity to be heard. Not meaningful or not satisfactory. There's a difference, isn't there? He doesn't like the choice that the process requires him to make. But the process is pretty clear, and if it meets what the Supreme Court says the prison must afford him, the fact that it has difficult consequences doesn't strike me as being a classic due process file. These are particularly difficult consequences, and I don't think the Supreme Court has set out It would be if we assumed that the prison wouldn't be able to protect him from retaliation, but they do, in fact, have institutional procedures in place, protective segregation, which he, frankly, may not like much more than he likes maximum security segregation. But there are institutional solutions to the threat problem, are there not? There appear to be some. What he really wants to do is he really wants to be able to get out of maximum security prison and go back to the general prison population without having to debrief and tell the warden what he knows about the gang. That's kind of the crux of his position, is it not? His position is that indefinite solitary confinement is unconstitutional. He must have periodic reviews. He had an Eighth Amendment trial on that, and he lost. So the Eighth Amendment claim is gone. He may not like it, but the court found that it didn't violate his constitutional rights to keep him where he is. The conditions of his confinement did not give rise to an Eighth Amendment claim, but it did not address whether his due process claim, whether he did, in fact, have a meaningful opportunity to be heard, and whether the choice between indefinite isolation and death or serious injury is what the Constitution is sufficient for. But you're asking us to assume that if he were moved, I'll call it to protective segregation, that he wouldn't be protected from death. And there's nothing in the record that allows me to make that leap that you're asking us to make. I understand. There doesn't appear to be anything in the record, but there does appear to be in the record. Clearly, he has a subjective belief. There's no question about that. Thank you very much, Ms. Cates. Thank you, Your Honor. And, Ms. Cates, I also want to thank you on behalf of the court for accepting the pro bono appointment. We very much appreciate the willingness of counsel to do this. Thank you.
judges: Thompson, Tallman, Duffy